By the Court.
Campbell, J.
This action was brought by the plaintiff to recover damages against the defendants for a libel published by them in a newspaper called the “Sunday Dispatch,” in January, 1848, which was as follows:
“Sometime about the year 1834 there was a Sunday paper in this city termed the ‘ Sunday Courier,’ which was started by John Tryon. This establishment, Tryon sold to Bennett, who gave his note for the purchase money, and which note Tryon paid away without recourse to himself. The man who took the note was at that time well off; the money was of no conse *64 quence to him', and Bennett got possession of the types, press, &c., but he not having the ability.to make a Sunday paper go, it died off. When the note became due, Bennett could not pay, and begged the holder of the note to wait. The man did wait, and, some years after, Bennett having got on, the note was sued, but Bennett pleaded the statute of limitations, and got off scot-free.”
There are several counts in the declaration by different inuendoes ini which, averring, among other things, that the defendants meant and intended it to be understood that the plaintiff “■first dishonestly delayed, and afterwards refused to pay, &c. also that he was “ poor and without money, and unable to pay his debtsalso, that he “ by humble solicitation, obtained further time for the payment of his said supposed note, which time" he afterwards artfully contrived and successfully used- as grounds for resisting the payment of the said supposed note;” also, that the defendants thereby intended to insinuate and cause it to be believed, “that the plaintiff-had been guilty of swindling and cheating the holder of the said supposed note out of its supposed value, and that he was a cheat and swindler;” and that they thus “ intended to, and did, hold the plaintiff up to ridicule, contempt, and infamy,” &c. There-is no averment that the plaintiff has sustained any special damages. The defendants pleaded first, not guilty; second, that the supposed libels Were not,’ nor was either of them, published maliciously or falsely, but the same are true in substance and fact; and third, that they were not published maliciously, and that the plaintiff has not suffered any damage whatever. The plaintiff demurred specially to the second and third pleas. .
We were all of opinion, upon the argument of this cause, that the second-plea was good; that the.plaintiff having set forth fully the’ whole of the supposed libel, it was sufficient for the. defendants to plead -that the same was true in .substance and fact. We were also Of opinion that the-third plea, which alleges that the supposed-libel was. not published maliciously and that the plaintiff has suffered, no damage, was bad, and that upon the demurrer to’that plea the .plaintiff was entitled to *65 judgment. But the more serious question raised by tbe defendants on tbe argument, and presented by them for our consideration with great earnestness, is whether this publication is or is not libellous.
Our attention was called to the earlier periods in the history of the common law, when there was no distinction between written and spoken slander. But it may be remarked that libelling could not be the crime of an illiterate people, and in the former days of English jurisprudence, when few could read and write, it might well have been considered that the poison of spoken, would diffuse itself as. generally as that of written slander. But it is now nearly two centuries since the distinction was taken, and the press, then feeble, has now become powerful for good and for evil, speaking, as it does, almost instantaneously to a whole nation by its million tongues. It is too late to question the law which has become well, and, we think, wisely settled on both sides of the Atlantic, that, opinions of character which are not slanderous when merely spoken, become libellous when printed and published. It is not to be denied that a partial difficulty has attended the application of any rule which seeks to prescribe what is or what is not libellous. Mr. Cook, in his law of defamation, (87 Law Library, N. S., page 18,) considers that every publication may be tried by the rule laid down by Bay ley, Justice, in McGregor v. Thwaites, 3 Barn. & Cress. 33: “ That any writing is a libel, provided the tendency of it be to bring a man into hatred, contempt, or ridicule.” Chancellor Walworth, in Cooper v. Stone, 2 Denio, 299, says: “But to sustain a private action for the recovery of a compensation in damages for a false and unauthorized publication, the plaintiff in such action must either aver and prove that he has sustained some special damage from the publication of the matter charged against him, or the nature of the charge itself must be such that the court can legally presume he has been degraded in the estimation of his acquaintances, or of the public,, or has suffered some other loss, either in his property, character, or business, or in his domestic or social relations, in consequence of the publication of such *66 charges.” (See Goodrich v. Davis, 11 Metcalf, 473 Parmiter v. Coupland, 6 Mees. & Welsh. 105) We must throw out of view in this case, all the authorities which' support the doctrine that a man shall recover for special damage sustained by reason of a publication affecting his trade or profession, because there is ño averment or pretence that the plaintiff has sustained any special ' damage in his business or in any other form, or that the article was written in reference to any occupation' or calling in which he may be engaged. Then does’ the publication' in‘question charge the plaintiff with áñy offence which renders him amenable to punishment ? or does it necessarily tend to hold him up to ridicule, hatred, contempt, or infamy ? It is no crime to interpose the statute of limitations as a defence to an action at law. On the contrary, it may, under certain circumstañces, be not only right, but meritorious,' as where a defendant has actually paid the claim, but has lost the evidence "of the payment, or where, in any action for damages, the witnesses, by whom he might successfully have defeated a recovery, have died during the time that the commencement of the . action has been delayed. It is a statute of repose, tending to quiet strife, and, looking at the frailty of human memory and the natural destruction and loss of the evidences of transactions, presumes that obligations have been discharged which have not been recognized as binding for a term of years. We cannot, therefore, see how it can be deemed libellous to charge a man with having pleaded the statute" of limitations. The article alleged to be libellous, was published in 1848. It refers to transactions which commenced in 1834, fourteen years previous! ’ It states that in that year the plaintiff entered into a business operation'; that he'purchased a newspaper establishment, and gave his note for it; that he could not succeed and was unable to pay the note7 that he begged for delay; and that subsequently, when sued upon the note, he pleaded the statute of limitations successfully. There is no charge that he interposed the plea dishonestly.' For aught: that 'appears, it may have been fairly and honestly interposed.’ "There was abundance óf time for him to have asked and obtained delay, to *67 have afterwards paid the note, to have lost the evidence of such payment, and to have meritoriously pleaded the statute. The note was transferred without recourse, and, for aught that appears, the plaintiff might have been misled and. deceived by the person of whom he purchased the newspaper establishment, either as to its subscribers or income, by which he became poor and unable to pay his note; that such misrepresentation and deception on the part of the payee of the note would not constitute a defence in the hands of a bona fide holder,, and he interposed the statute as a legal bar to support an equitable defence. In short, we are unable to see that this publication imputes any offence, or that its necessary tendency is to expose the plaintiff to ridicule, hatred, or contempt.
The law of libel ought to be considered, and is, in its spirit, a benevolent and salutary provision for the peace and security of community, but it cannot redress every injury sustained by a breach of morals or of good manners. We may not approve of the taste of publications, such as is set forth in the declaration in this case. We may lament the existence* of a disposition to make private character too much the subject of comment and abuse, without having it in our power, through the instrumentality of the law, to arrest the evil. It is for another .tribunal to dispose of such questions.
-Upon the whole cáse, therefore, there must be judgment for the defendants.